IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MATTHEW VAUGHN, § | |
|    PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:19-CV-1220-C-BK |
| § | |
| NEBRASKA FURNITURE MART, LLC § | |
| AND TXFM, INC. D/B/A NEBRASKA § | |
| FURNITURE MART, § | |
|    DEFENDANTS. § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Judge's *Order*, Doc. 15, before the Court is Plaintiff's *Motion for Default Judgment*, Doc. 8. As detailed here, the motion should be **GRANTED IN PART**.

**I. BACKGROUND AND PROCEDURAL HISTORY**

In this employment discrimination suit, Plaintiff alleged that Defendants violated state and federal law when they terminated his employment "because of his race (Black), his color (Black) and national origin (African American)." Doc. 1 at 4. Plaintiff also alleged his termination was in retaliation for "complaining about and opposing illegal race, color, and national origin discrimination . . . ." Doc. 1 at 4. Plaintiff was unemployed for approximately seven weeks after his termination. Doc. 10 at 26. Plaintiff later worked at a lower paying job at Globe Life Insurance for six months.[1] Subsequently, Plaintiff and his family moved to South Dakota because his wife obtained a better paying job. Doc. 17.

---

[1] Plaintiff earned $16.01/hour with Defendants and $14.00/hour with Globe Life Insurance. Doc. 10 at 26.

Plaintiff filed his complaint on May 20, 2019, Doc. 1, and summonses were returned as executed to Defendant Nebraska Furniture Mart, LLC, Doc. 5, and Defendant TXFM Inc. (collectively, "Defendants") on July 24, 2019.  Doc. 6.  After no response by Defendants, Plaintiff filed the instant motion, Doc. 8, and a default was subsequently entered by the clerk of court, Doc. 13.  On September 25, 2019, an evidentiary hearing was held on the issue of damages sought.  Doc. 17.

## II.  APPLICABLE LAW

The conditions upon which default may be entered against a party, as well as the procedure to seek the entry of default judgment, are found in Rule 55 of the Federal Rules of Civil Procedure.  The entry of default judgment is the culmination of three events: (1) default, which occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure; (2) entry of default by the clerk of court when such default is established by affidavit or otherwise; and (3) application by plaintiff to the clerk for a default judgment.  FED. R. CIV. P. 55(a); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

Standing alone, however, a defendant's default does not entitle a plaintiff to a default judgment.  *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam); *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  The decision to grant a default judgment is one soundly within the district court's discretion.  *Lewis*, 236 F. 3d at 767.  "[D]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."  *Id.* (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)).  Moreover, there must be a sufficient basis in the pleadings for a court to enter judgment by default.  *Nishimatsu*, 515 F.2d at 1206.  In defaulting,

the defendants are deemed to have admitted the well-pleaded allegations of the plaintiff's complaint and are precluded from contesting the established facts.  *Id.* (citations omitted).

### III. ARGUMENTS AND ANALYSIS

**A.  Default Judgment on Title VII Discrimination and Retaliation Claims**

Plaintiff contends that the facts alleged in the complaint support a discrimination and retaliation claim against Defendants under state and federal law.  Doc. 1 at 4.  "The complainant in a Title VII trial must carry the initial burden . . . of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  To do so, a plaintiff must show: (1) he was a member of a protected class; (2) he was qualified for his position; (3) an adverse employment action was suffered; and (4) other similarly situated employees were treated more favorably.  *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)).  To state a claim for retaliation under Title VII, a plaintiff must show "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (citation omitted).

Upon review, the well-pled allegations of Plaintiff's complaint establish a prima facie case of racial discrimination, as: (1) Plaintiff is African American/Black; (2) Defendants employed Plaintiff for over three years; (3) Defendants terminated Plaintiff's employment; and (4) Plaintiff's Caucasian/White coworkers were promoted over Plaintiff, even though they performed less efficiently than Plaintiff.  Doc. 1 at 2-3.  Plaintiff's complaint also establishes a claim for retaliation, as: (1) Plaintiff filed a complaint of illegal discrimination with Defendants; (2) Defendants subsequently terminated Plaintiff; and (3) Plaintiff's supervisor "became upset and asked Plaintiff if he filed his discrimination complaint with the HR Representative because

3

she was [B]lack," (4) Defendants then told Plaintiff to resign or he would be terminated from his position, and (5) Defendants subsequently terminated Plaintiff. Doc. 1 at 3; *Cf. Breazell v. Permian Trucking & Hot Shot, LLC*, No. 7:15-CV-199-XR, 2017 WL 57877, at *4 (W.D. Tex. Jan. 5, 2017) (granting default judgment on Title VII discrimination and retaliation claims when plaintiff reported a coworker to human resources for using a racial slur, plaintiff was harassed and discriminated against for reporting the discriminatory remark, and plaintiff received fewer assignments than similarly qualified coworkers of other races).

Accordingly, Plaintiff's well-pleaded allegations support his federal discrimination and retaliation claims against Defendants. Additionally, Plaintiff's well-pleaded allegations support his state causes of actions for the same reasons.[2]

**B. Damages**

Plaintiff seeks $12,428 for lost wages,[3] $27,352 for five years of future lost wages at $5,470 a year, and $8,750 for attorneys' fees. Doc. 10 at 6, 27. During the evidentiary hearing, Plaintiff asserted that he also seeks (1) $270,000 in compensatory and punitive damages for emotional and mental suffering he experienced as a result of Defendants' unlawful

---

[2] State and federal causes of actions for discrimination and retaliation are virtually identical because "Title VII guides the Court's interpretation of TCHRA claims" and "[t]he Texas Supreme Court has stated courts should use federal statutes and cases addressing Title VII to interpret TCHRA." *White Glove Staffing, Inc. v. Methodist Hosps. of Dallas*, No. 3:17-CV-1158-K, 2017 WL 3925328, at *2 (N.D. Tex. Sept. 7, 2017) (Kinkeade, J.) (citing *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001)).

[3] At the evidentiary hearing, Plaintiff stated he received one check for $434 in unemployment. Plaintiff clarified that the unemployment check was not deducted from Plaintiff's original lost wages calculation ($12,862 - $434 = $12,428). Plaintiff also testified that his back-pay calculation accounts for his mitigation of damages (Plaintiff earned $16.01/hour when employed by Defendants, but only $14.00/hour when employed by Globe Life Insurance).

discrimination and treatment;[4] and (2) approximately $4,000 for medical expenses that Plaintiff incurred after being terminated because those medical expenses would have been covered under Plaintiff's health insurance plan with Defendants.

**1. Back Pay**

The Court concludes that Plaintiff is entitled to back pay. Once a plaintiff establishes that unlawful discrimination is the cause of his losses, he is entitled to back pay. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416. (1975). Back pay compensates the employee for what he would have earned absent the employer's violation of Title VII. *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 482 (5th Cir. 2007), *order clarified* (Sept. 27, 2007). "In general, back pay liability in a wrongful termination case commences from the time the discriminatory conduct causes economic injury and ends upon the date of the judgment." *Id.*

Because failure to mitigate is an affirmative defense, the burden of proof lies with the defendant to show that substantially equivalent work was available and that the employee did not exercise reasonable diligence to obtain it. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003). Here, Defendants have abandoned their opportunity to raise the affirmative defense of Plaintiff's failure to mitigate damages by defaulting. *See Breazell v. Permian Trucking & Hot Shot, LLC*, No. 7:15-CV-199-XR, 2017 WL 3037432, at *3 (W.D. Tex. July 18, 2017) (Rodriguez, J.) ("Defendant has the burden of proof on the affirmative defense of

---

[4] This amount includes $100,000 for mental anguish, $25,000 for past emotional pain and suffering, $10,000 for future emotional pain and suffering, $25,000 for past loss of enjoyment, $10,000 for future loss of enjoyment, $25,000 for past inconvenience, $25,000 for future inconvenience, and $50,000 for punitive damages.

5

Plaintiff's failure to mitigate but has abandoned its opportunity to carry this burden by defaulting.").

While Plaintiff requested $12,428 in back pay, as of the date of this recommendation, he is actually entitled to $16,821.05 because Plaintiff's pro rata back pay rate is $21.65[5] and 797 days[6] have passed since his termination. *See Palasota.,*499 F.3d at 482 ("back pay liability in a wrongful termination case commences from the time the discriminatory conduct causes economic injury and ends upon the date of the judgment."). Plaintiff's back pay award is also reduced by the $434 he received in unemployment compensation. *See supra* note 3. Accordingly, Plaintiff's back pay award of $16,821.05 should be **GRANTED**.

### 2. Compensatory Damages

Plaintiff's request for $220,000 in compensatory damages is legally insufficient, however. Compensatory damages for emotional harm, including mental anguish, will not be presumed simply because the complaining party is a victim of discrimination. *DeCorte v. Jordan,* 497 F.3d 433, 442 (5th Cir. 2007). "The award of damages must be supported by specific evidence of the nature and extent of the harm. Such evidence may include medical or psychological evidence in support of the damage award." *Miller v. Raytheon Co.*, 716 F.3d 138, 147 (5th Cir. 2013). A plaintiff's vague and conclusory testimony that he suffered emotional harm, such as being "highly upset," experiencing sleeplessness, stress, and marital problems, are insufficient. *See Brady v. Fort Bend Cnty.,* 145 F.3d 691, 719 (5th Cir. 1998). The standard for compensatory damages under state law is identical to federal law, as the Supreme Court has long

---

[5] $12,862 / 594 days = $21.65 per day. *See* Doc. 10 at 27 (there are 594 days between January 5, 2018 and August 22, 2019).

[6] There are 797 days between January 5, 2018 and March 12, 2020.

6

required that compensatory damages for emotional distress "be supported by competent evidence concerning the injury." *Id.* at 718.

In *Miller v. Raytheon Co.*, the Court of Appeals for the Fifth Circuit vacated a $100,000 damages award for mental anguish which was "premised solely on the testimony of [Plaintiff] and his wife." *Miller*, 716 F.3d at 147. The Fifth Circuit reasoned that"[Plaintiff] presented no expert medical or psychological testimony of the extent of his mental anguish. While [Plaintiff] testified that he suffered chest pain, back pain, sleep disturbances, he also admitted that he did not take any over-the-counter pain or sleep medications. Nor did [Plaintiff] seek the assistance of any health care professional or counselor." *Id.*

*Miller* is factually analogous to the present case because Plaintiff's only evidence of emotional distress is his affidavit, which avers that since his termination he has lost multiple nights of sleep, he misses the sense of accomplishment and pride that his position gave him, and that he wakes up in the middle of the night worrying about how his family is going to pay bills and "why someone who [he] worked for over three years would treat [him] so unfairly." Doc. 10 at 27. Plaintiff fails to support his mental anguish claim with a psychologist's testimony, allege that he is taking medication for his condition, or that he has sought the assistance of any health care professional or counselor. *See Miller*, 716 F.3d at 147; Doc. 10 at 26-28; *see also Lewallen v. City of Beaumont*, 394 F. App'x 38, 46 (5th Cir. 2010) (vacating future compensatory damages in failure-to-promote case because plaintiff did not adduce evidence sufficient to demonstrate the likelihood of "mental anguish in the future as a result of the constitutional violation that she experienced in the past"). Accordingly, Plaintiff's compensatory damages request totaling $220,000 should be **DENIED**.

### 3. Punitive Damages

Plaintiff's request for $50,000 in punitive damages is also legally insufficient. "A Title VII plaintiff may recover punitive damages upon proof that the defendant acted with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 467 (5th Cir. 2013) (citing 42 U.S.C. § 1981a(b)(1)). "This is a higher standard than the showing necessary for compensatory damages, satisfied in 'only a subset of cases involving intentional discrimination.'" *Id.* (quoting *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 534 (1999).

"The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad,* 527 U.S. at 535. Malice has been described as "evil motive or intent," and reckless indifference has been described as "a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Id.* at 536 (quoting *Smith v. Wade,* 461 U.S. 30, 37 n.6, (1983)). "Pointing to evidence of an employer's egregious behavior would provide one means of satisfying the plaintiff's burden to 'demonstrate' that the employer acted with the requisite 'malice or . . . reckless indifference,'" but "an employer's conduct need not be independently 'egregious' to satisfy § 1981a's requirements for punitive damages award." *Id.* at 539 (quoting 42 U.S.C. § 1981a(b)(1)). The standard for punitive damages under state law is identical to federal law. *See Miller v. Raytheon Co.*, No. 3:09-CV-440-O, 2011 WL 13234303, at *12 n.7 (N.D. Tex. May 13, 2011) (J. O'Connor).

Here, Plaintiff fails to allege or point to evidence that Defendants acted with knowledge that their actions may violate federal law. *See* Doc. 1 at 2-3. At best, Plaintiff alleges "Defendants falsely reported to the Texas Workforce Commission that Plaintiff resigned." Doc.

1 at 3. However, this allegation fails to satisfy the higher standard for punitive damages because it pertains to Defendants' "awareness that [they were] engaging in discrimination," and not "the employer's knowledge that it may be acting in violation of federal law." *See Kolstad,* 527 U.S. at 535. Plaintiff's remaining allegations—that he was constantly berated, attacked, and yelled at with baseless accusations in violation of company policy—similarly fail to allege that Defendants acted with *knowledge* that their actions may violate federal law. *See id.*; Doc. 1 at 2-3.

For the foregoing reasons, Plaintiff fails to satisfy the higher standard for punitive damages. *Boh Bros. Const. Co.*, 731 F.3d at 467. Accordingly, Plaintiff's request for $50,000 in punitive damages should be **DENIED**.

### 4. Front Pay

Next, Plaintiff seeks $27,352 in front pay. Doc. 10 at 27 ("My lost wages in the future will be at least $5,470.00 a year[.] I would estimate for the next five years, totaling $27,352.00.").[7] "Front pay . . . is intended to compensate the plaintiff for wages and benefits he would have received from the defendant in the future if not for the discrimination." *Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 2002)). Under Title VII, courts have discretion to award front pay as part of their authority to provide "other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1).

#### a. Feasibility of Reinstatement

Although reinstatement is the preferred remedy, front pay may be awarded if reinstatement is not feasible. *Reneau v. Wayne Griffin & Sons, Inc..*, 945 F.2d 869, 870 (5th Cir. 1991)). Here, reinstatement is not feasible because Plaintiff moved to another state for his wife's

---

[7] $5,470 x 5 years = $27,350.

job, and a hostile relationship existed between Plaintiff and Defendants. *See Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 526 (5th Cir. 2001) (reinstatement infeasible in light of "hostile relationship"). Additionally, Plaintiff sufficiently alleges a hostile relationship existed because he was constantly berated, attacked, and yelled at with baseless accusations in violation of company policy. Doc. 1 at 2-3.

### b. *Entitlement to Front Pay*

The Court next turns to the alternate remedy of front pay. It is within the discretion of the Court to determine whether to award front pay. *Downey v. Strain,* 510 F.3d 534, 544 (5th Cir. 2007). Front pay is calculated by the Court "through intelligent guesswork," and due to its "speculative character," district courts are given "wide latitude" in determining whether it should be awarded and, if so, in what amount. *Id.* The Court considers six factors in determining the amount of a front pay award: "(1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship." *Id.*

Courts have denied front pay where the plaintiff failed to mitigate his damages or where the plaintiff received large enough punitive or liquidated damages to render front pay excessive. *See Walther v. Lone Star Gas Co.,* 952 F.2d 119, 127 (5th Cir. 1992). Neither circumstance is present here. First, Plaintiff testified at the evidentiary hearing, and the Court found his testimony credible, that since he was fired, he has been engaged in an exhaustive search for alternative employment. While Plaintiff was employed with Globe Life for six months, his family moved from Texas to South Dakota and he was still unemployed at the time he filed the instant motion. Doc. 10 at 27. Plaintiff mitigated his damages for at least six months; moreover,

a plaintiff does not have to actually find another job to have successfully attempted mitigation. *West*, 330 F.3d at 394. Second, the Court may not limit Plaintiff's front-pay award on the basis of a back-pay award. *Julian*, 314 F.3d at 730 (reversing district court's decision to deny front pay based solely on plaintiff's back-pay award).

Considering the foregoing factors, the Court finds that an award of front pay is warranted in this case. *Kostic*, 2015 WL 4775398, at *4 (awarding $166,229 in front pay over two years when plaintiff searched for alternative employment and was not awarded liquidated or punitive damages).

### c. *Amount of Plaintiff's Front Pay Award*

The Court concludes that Plaintiff should be awarded front pay corresponding to five additional years of lost employment based on the application of the Fifth Circuit's six-factor test. Considering "the myriad of non-discriminatory factors which could validly affect the employer/employee relationship," the Court concludes that it is a reasonable assumption that Plaintiff would, for legitimate, non-discriminatory reasons, have been employed by Defendants for five additional years. *Downey*, 510 F.3d at 544. For example, Plaintiff was employed by Defendants for more than three years, and he held the position with permanency because he continued to receive raises during his employment. *Id.*; Doc. 10 at 26. Due to Defendants' failure to respond to Plaintiff's complaint, there is no evidence in the record showing that the nature of Plaintiff's work could be consolidated into other jobs, or that his age and physical condition limited his productivity. There is also no evidence in the record to refute Plaintiff's argument that he was terminated because of his race and for filing a complaint of illegal discrimination with Defendants. Doc. 1 at 3. A front pay award of five years is therefore appropriate in this case. *Cf. Kostic*, 2015 WL 4775398, at *4 (limiting front pay award to two

11

years due to plaintiff's "inability to accept criticism, his often-hostile temperament, and his overly aggressive approach to students and faculty."). Accordingly, Plaintiff's request for $27,350 in front pay should be **GRANTED**.

### 5. Medical Expenses

During the evidentiary hearing, Plaintiff averred that he incurred $4,000 in medical expenses since his termination that would have been covered under Plaintiff's health insurance plan with Defendants. Plaintiff provided no documents to support this contention. Accordingly, Plaintiff's request for $4,000 in medical expenses should be **DENIED**.

### 6. Attorneys' Fees

Plaintiff finally requests $8,750 in attorneys' fees. The court may award reasonable attorneys' fees to the prevailing party in a Title VII action. 42 U.S.C. § 1988(b). In adjudicating an award of attorneys' fees in the Fifth Circuit, the court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The fee applicant bears the burden of proof on each issue. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light*, 50 F.3d at 324. Next, the court considers whether the lodestar figure should be adjusted upward or downward depending on its analysis of the 12 factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[8] *Riley*, 99 F.3d at 760. "Many of

---

[8] These factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the requisite skill to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted).  There is a strong presumption that the lodestar figure represents a reasonable fee.  *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 541 (5th Cir. 1992).

   *a. Hourly Rates*

In establishing reasonable hourly rates, the fee applicant typically submits "copies of resumes or summaries of the qualifications of attorneys involved in the litigation, as well as information regarding the individual's litigation skills generally." *S & H Indus., Inc. v. Selander*, No. 11-CV-2988-M-BH, 2014 WL 1116700, at *5 (N.D. Tex. Mar. 20, 2014) (Lynn, J.) (citation omitted); *see also Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there.").

Here, Plaintiff's counsel has provided evidence that the requested rate of $500 per hour is reasonable.  Doc. 10 at 5 ("In Cause No. DC-18-1076 . . . the Court stated . . . . 'Jason Smith has a reputation for having ethics and integrity in handling litigation matters for clients.  $500.00 is a reasonable fee for Jason Smith in this case.'").  Counsel's asserted hourly rate also is similar to hourly rates deemed reasonable by the Fifth Circuit.  *See Miller*, 716 F.3d at 149 (affirming district court's determination that a thirty percent reduction in the hourly rates of $825, $775, and $400 to $577.50, $542.50, and $280 for the three primary attorneys was reasonable).

   *b. Number of Hours*

Plaintiff's counsel has also provided evidence that the case required 17.5 hours of work. Doc. 10 at 24-25.  Counsel testified that he spent an additional 1.5 hours preparing for the

evidentiary hearing and 1.0 hour attending the evidentiary hearing, Doc. 17, for a total of 20 hours expended.  In order to determine the reasonable number of hours expended in a case, the fee applicant must present adequately documented time records to the court.  *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990).  Upon review of the billing records, the Court finds the number of hours expended reasonable and necessary for the successful prosecution of this action.  Therefore, the court finds that the lodestar amount in this case is $10,000.  The Court finds that no reduction or increase is warranted based on the *Johnson* factors.  Accordingly, Plaintiff's award of $10,000 in attorneys' fees should be **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Default Judgment*, Doc. 8, should be **GRANTED** and judgment should be entered in favor of Plaintiff against Defendants Nebraska Furniture Mart, LLC and TXFM, Inc. d/b/a/ Nebraska Furniture Mart for $16,821.05 in back pay, $27,350 in front pay, and $10,000 in attorneys' fees.

**SO RECOMMENDED** on

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF
## RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(B). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).